Edward M. O’Gorman, J.
The defendant was convicted of a violation of subdivision 3 of section 56 of the Vehicle and Traffic Law in the Justices’ Court of the Town of Wallkill on February 5, 1958. He was charged with traveling at a speed of 63 miles an hour in a 50~mile zone.
The defendant urges on this appeal that his conviction should be set aside because the Justice of the Peace before whom he was tried refused to disqualify himself when asked to so do prior to the trial. He argues further that the conviction should be set aside because the evidence in support of it was inherently improbable.
On the trial before the Justice, the People introduced the testimony of the arresting officer to the effect that he had clocked the defendant over a stretch of one quarter of a mile on Boute 17 in the town of Wallkill, and that by his observation the defendant was traveling at the rate of 63 miles an hour over that distance. The People further introduced testimony as to the accuracy of the trooper’s speedometer.
The defendant and his wife both testified that at none of the times in question was the defendant exceeding a speed of 50 miles per hour.
The defendant now urges, by means of certain mathematical computations, that the trooper’s testimony is incredible because, in order for the trooper to have caught up with defendant’s vehicle as the trooper testified, it would have been necessary for the trooper’s vehicle, over the two and one-half mile stretch involved, to have achieved speeds varying between 84 miles an hour and 94 miles an hour, depending upon the interpretation of his testimony.
This court feels that the method of computing these speeds, as set forth in defendant’s argument, is unsound in that it leaves out of account the fact that at the end of the chase, the defendant’s vehicle had been stopped. Further, the possibility that the State police car could attain a speed of between 84 and 94 miles an hour on a modern four-lane highway such as Boute 17 is not beyon'd the realm of credibility. In any event, it was a question of fact for the Justice to determine, and his determination is not to be set aside unless it is clearly erroneous.
The defendant places considerable reliance on his argument that the Justice should have disqualified himself. The following facts are not disputed by the. People, and are confirmed by the return filed by the Justice. Some time after the arrest of defendant on January 12, 1958, word of his arrest was communicated in some fashion to the Tri County Motor Club, of which defendant was a member. One Theodore Brining, who *203 signed himself as “ Secretary Treasurer ” of this club, undertook to write a letter on the 14th of January to the New York State Automobile Association, in the manner following:
January 14th, 1958
Mr. Charles Powers
Secretary
New York State Automobile Association 28 East 78th Street,
New York 21, New York
Dear Charles:
Our member William Hartgrove of Hancock, New York was arrested on Route #17 new Walkill, New York, Sunday, January 12th, 1958 at 12:30 P. M. by a New York State Trooper from “ K ” Barracks. He was charged with going 60 M.P.H. in a 50 mile zone and ordered to appear before Justice William Hamblin, Overhill Road, Middletown, New York, January 21, 1958 at 7 P. M. He has retained John Hinkle Attorney of Hancock, New York.
Mrs. Hartgrove was in the car and both saw the trooper coming three miles back on a straight stretch and observed that they were going under 50 because Mr. Hartgrove has one conviction for speeding on his license. The trooper was naturally going faster in order to catch them. They proceeded and observed this trooper stop two other cars behind them when they were going 48 M.P.H. The Hartgroves speedometer has been checked recently since his conviction and certified accurate. We understand that Mr. Hinkle will appear on January 21st and request a Jury trial at the convenience of the parties and a report as to the date the speedometer on the police car was checked and another check at this time should the case be continued.
We believe that this arrest was in justified and that the case should be dismissed. We would appreieate your assistance and advice.
Sincerely yours,
Tel County Motob Club
Theodore R. Brining
Secretary Treasurer
TRB/eat
ec: Wm. Hartgrove
John Hinkle
Wm. Hamblin
A copy of this letter was forwarded to the attorney for the defendant and also to the Justice of the Peace before whom the defendant’s summons was returnable.
On January 16, 1958, the attorney for the defendant sent a letter to the New York State Automobile Association correcting certain alleged misstatements of fact in the first letter, and setting forth certain additional information favorable to the defendant. A copy of this letter was also forwarded to the Justice of the Peace.
When the case was reached for trial, counsel for the defendant made a motion that the Justice of the Peace disqualify himself because, by the letter of the Tri County Motor Club, the'Justice has been advised that the defendant had a prior conviction for *204 speeding, and as a result it would be impossible for the defendant to obtain a fair trial under the circumstances. The Justice of the Peace denied the motion and proceeded with the trial, with the results hereinbefore set forth.
Defendant places his principal reliance upon two cases which deal with this question. In People v. Reed (185 Misc. 908) the defendant appealed from a conviction of a similar traffic violation. At the conclusion of the trial, the Justice took one week to review the testimony. During that week, the District Attorney served upon him an information accusing the defendant of having been previously convicted of a similar traffic infraction. Thereafter, the Justice entered a judgment of conviction. The County Court, in vacating the judgment of conviction, stated (p. 909): “ The evidence is sharply conflicting and the veracity of the defendant was an issue. The information of a previous conviction, which could not legally be introduced, may have affected the outcome of the trial.”
In the second case relied on, People v. Fiore (9 Misc 2d 468), the opinion states that at the conclusion of the testimony the trial court examined appellant’s driver’s license, which was not in evidence, and commented on previous traffic violations therein set forth. It was held reversible error for the court to look at the license before conviction, the court stating: “ Such practice should be scrupulously avoided in the future, since it is a clear violation of defendant’s rights.”
Both of the foregoing cases would seem to rest on sound principles. In People v. Reed (supra) the facts were such as to lead strongly to the conclusion that the trial court had considered the prior conviction as evidence in the case. This is also true in the Fiore case. If a trial court should consider as evidence a prior speeding conviction, then it would clearly be error, and any judgment thereafter reached should be subject to reversal.
There is a further element in each of the cases referred to which supports the results there reached. In the Reed case the District Attorney committed an improper act in calling to the court’s attention the prior conviction. In the Fiore case the court itself was responsible for making the prejudicial inquiry.
In the case at bar we have a different situation. Here, admittedly, by no improper act of any of the parties or the Trial Justice, the information was brought to the attention of the Justice prior to the trial, by a volunteer. There is no indication that the Trial Judge either placed any reliance upon the accuracy of the hearsay statement contained in the letter, or regarded it as any evidence in the case.
*205 Under these circumstances, to adopt the view urged by the defendant would be to hold, as a matter of law, that the Trial Justice was incapable of eliminating from his consideration of evidence this information brought to his attention by the letter. This would apply a rule to a Court of Special Sessions which is not applied either to jury trials or other trials, in which, frequently, inadmissible matter is ordered stricken from the record.
In the opinion of this court, the verdict of conviction should stand. It is a sound policy to strike down efforts by a District Attorney to inject inadmissible evidence into a case of this type. It is also proper to restrain the Trial Justice from making any inquiry about inadmissible evidence. There is no policy, however, which would require setting aside a conviction where the Trial Justice and the District Attorney were blameless, and where there is no other indication that the trial court assigned any weight to the unauthorized disclosure, or permitted it to influence his judgment. A different rule would provide a simple method for ousting a justice of the peace from jurisdiction in any case, merely by communicating to that justice, prior to the trial, information of a nature which might be considered prejudicial.
The conviction appealed from is affirmed.
Submit order.