OPINION OF THE COURT
Michael A. Gary, J.
Each defendant stands charged with the crime of driving while intoxicated in violation of Vehicle and Traffic Law § 1192 (2) and (3), respectively. Defendant Devic was also charged with the offense of reckless driving in violation of Vehicle and Traffic Law § 1190. At their arraignment on the above charges, the court exercised its discretion provided in *1010 an underutilized provision of the Vehicle and Traffic Law, specifically § 510 (3), which allows for discretionary temporary suspension of a driver’s license during the pendency of a prosecution. While there is some precedent for using this procedure, neither the statute nor case law provide, guidelines demonstrating appropriate instances in which to implement this seemingly extreme sanction.
Vehicle and Traffic Law § 510 (1) gives the court authority to suspend or revoke a driver’s license as outlined throughout section 510. Therein are delineated all the instances when both mandatory and permissive suspensions are in order, as well as the restrictions on implementing the suspensions. The last sentence of section 510 (3), appearing to be somewhat of an afterthought, provides for an uncategorized, discretionary suspension as follows: "A license or registration, or the privilege of a non-resident of operating a motor vehicle or motorcycle in this state or of the operation within this state of any motor vehicle or motorcycle owned by him, may, however, be temporarily suspended without notice, pending any prosecution, investigation or hearing.”
An examination of the legislative history of Vehicle and Traffic Law § 510 reveals that, since codification in 1929, this portion of Vehicle and Traffic Law § 510 (3) has been included in the statutory scheme. Yet, surprisingly little has been written about this type of discretionary, temporary suspension. Even the highly regarded treatise, Handling the DWI Case in New York, by Peter Gerstenzang, Esq. (1987), is silent on this issue.
There does exist a line of decisions interpreting the above-quoted language, which supports the conclusion that drivers licensed in New York State and out of State may have their licenses temporarily suspended pending any prosecution, investigation, or hearing. (Matter of Del Zio v Chinman, 54 Misc 2d 697 [1967]; Robertson v Tomson, 60 Misc 2d 275 [1969]; Matter De Vito v Aylward, 77 Misc 2d 524 [1974]; Matter of Ryan v Smith, 139 Misc 2d 151 [1988].) Although the statute allows for suspensions without notice, all reported decisions arise in the context of a defendant’s arraignment, as do the matters herein, and therefore the driver has actual notice of the suspension. A survey of these cases, however, fails to reveal the factors which justify taking such a drastic step as the temporary suspension of a license under the uncategorized provision of section 510 (3) without a hearing.
*1011 At one end of the scale stands Ryan v Smith (supra) upholding the suspension of the driver’s license of a defendant who was arraigned on a charge of driving while intoxicated (Vehicle and Traffic Law § 1192 [2], [3]), solely on the basis of a blood alcohol reading. It was alleged that the defendant’s blood alcohol content was .23, which the court observed was extraordinarily high. (Ryan v Smith, supra, at 153.) At the other end of the scale, the courts in Robertson v Tomson (supra) and De Vito v Aylward (supra) examined a combination of factors to justify a temporary suspension. Both courts looked to the nature of the charges and defendants’ prior driving record. The Robertson court cited as justification for the suspension the fact that defendant had only recently completed a 60-day suspension of his license upon his conviction for operating a motor vehicle while his ability to operate was impaired by the consumption of alcohol (Vehicle and Traffic Law § 1192 [1]). Similarly, in De Vito v Aylward (supra), the court cited defendant’s record of prior convictions showing "recent and persistent disregard for the traffic laws of the State” (Matter of De Vito v Aylward, supra, at 527; cf., Matter of Lemyre v Lippman, 57 Misc 2d 775 [1968] [temporary suspension annulled where all convictions were at least 15 years old]). By basing the suspensions, in part, on the defendants’ prior driving records, both courts were, sub silentio, applying one of the statutory criteria for permissive suspension of a driver’s license after a hearing. (See, Vehicle and Traffic Law § 510 [3].) Specifically, Vehicle and Traffic Law § 510 (3) (d) provides for permissive suspension of a driver’s license under the following circumstances: "for habitual or persistent violation of any of the provisions of this chapter, or of any lawful ordinance, rule or regulation made by local authorities in relation to traffic”.
This court concludes that the temporary suspension of a driver’s license pursuant to Vehicle and Traffic Law § 510 (3) requires a keen balancing of interests. On the one hand, possession of a driver’s license is a property interest protected from arbitrary taking by the New York Constitution. At the same time, the Legislature is empowered to regulate the use of the highways and to impose reasonable restrictions both on the issuance and continued use of a license to operate a motor vehicle. (See, Reitz v Mealey, 314 US 33 [1941].)
In Matter of Horodner v Fisher (38 NY2d 680 [1976], appeal dismissed 429 US 802 [1976]) the petitioner’s license was the subject of a mandatory revocation without notice or hearing, *1012 pursuant to Vehicle and Traffic Law § 510 (2) (a) (iv), when he was convicted of three speeding violations within a period of 18 months; He sought review of the revocation itself in a CPLR article 78 proceeding, contending that the statute was unconstitutional because due process required notice and a hearing before revocation could occur. The Court of Appeals distinguished between financial responsibility statutes which suspend the license of an uninsured motorist involved in an accident who failed to post security to cover the amount of a possible judgment against him (see, Bell v Burson, 402 US 535 [1971]) and the purpose of section 510 of the Vehicle and Traffic Law, which is to promote traffic safety by prohibiting recidivist traffic offenders from traveling the highways. This compelling public interest was found to outweigh the need for prior notice and hearing. Moreover, where the revocation was grounded, as here, on the State’s interest in keeping reckless drivers off the road, the court found that the statutorily provided article 78 review for every type of suspension and revocation (Vehicle and Traffic Law § 510 [7]) was sufficient due process protection. (See also, Matter of Harding v Melton, 67 AD2d 242 [1979], affd 49 NY2d 739 [1980].)
It is with this balancing of interests in mind that this court rejects the premise of a temporary suspension based solely on a high blood alcohol reading as in Ryan v Smith (supra), upon an arraignment for driving while intoxicáted. Rather, it seems entirely appropriate that a temporary suspension be grounded upon evidence that a driver’s continued operation of a motor vehicle represents a danger to the public. Part of the criteria should necessarily entail a review of the arraigned charges: e.g., driving while intoxicated under Vehicle and Traffic Law § 1192 (2), (3) or (4); leaving the scene under Vehicle and Traffic Law § 600; reckless driving under Vehicle and Traffic Law § 1190; those involving a motor vehicle under the Penal Law, such as, reckless endangerment under Penal Law §§ 120.20 and 120.25, vehicular assault under Penal Law §§ 120.03 and 120.04, or vehicular manslaughter under Penal Law §§ 125.12 and 125.13. The court is aware that the Vehicle and Traffic Law provides an alternate procedure for suspension of a license under section 1193 (2) (e) (formerly § 510 [2] [b] [vi]) when a defendant is charged with a violation of section 1192 that constitutes the second arrest under that statute within five years or is coupled with a felony charge under Penal Law article 120 or 125. The factors enumerated therein are useful for guidance, but this court finds the authority *1013 granted under Vehicle and Traffic Law § 510 (3) preferable to the cumbersome procedure outlined in Vehicle and Traffic Law § 1193 (2) (e).
Additional evidence demonstrating a threat to the public would normally consist of the defendant’s past driving record. As then Supreme Court Justice, and now Chief Judge of the Court of Appeals, Sol Wachtler reasoned in Robertson v Tomsom (supra, at 277): "When that person abuses the privilege and acts in a manner which would lead the proper authorities to believe that his continued operation of a vehicle would constitute a menace to himself and others, then it seems altogether proper that this person’s permission to drive should be temporarily suspended until a determination of his fitness can be ascertained.”
Finally, it should be noted that a temporary suspension is indeed just that. It is only for the pendency of the criminal proceeding whose duration is limited by the speedy trial provisions of CPL 30.30. (Cf., Matter of Harding v Melton, supra, at 739 [upholding the constitutionality of section 510 (4-a), which provides, inter alia, for the prehearing suspension of a license for failure to answer a summons for a moving violation; the duration of the suspension is not unconstitutionally vague as it is expressly limited to last no longer than the time the licensee fails to appear, after notice is given of the suspension].)
Turning to the merits of the two cases before this court, the following evidence was presented at arraignment.
Michael Forgette was charged with two counts of operating a motor vehicle while in an intoxicated condition (Vehicle and Traffic Law § 1192 [2], [3]) in New York County. Defendant’s blood alcohol reading was .20. In addition, defendant’s Division of Criminal Justice Services NYSIS record revealed that he had been convicted in 1984 of driving while intoxicated, and again for the felony of driving while intoxicated in 1988, and was currently on felony probation. At the time of his arrest, at 11:35 p.m., he was operating a motor vehicle pursuant to the restrictions embodied in a conditional license. (See, Vehicle and Traffic Law § 510 [3], [6].)
Marijan Devic was also arraigned on two counts of operating a motor vehicle while in an intoxicated condition (Vehicle and Traffic Law § 1192 [2], [3]), as well as reckless driving (Vehicle and Traffic Law § 1190). He too had a blood alcohol reading of .20. The reckless driving charge arose from the *1014 allegation that defendant’s vehicle collided with the rear bumper of the arresting officer’s radio motor patrol car! Devic’s NYSIS record revealed that he had been convicted last year for driving while intoxicated, his license had been revoked and he had been fined $350.
Applying the criteria discussed above, this court found substantial evidence to indicate that each defendant’s continued operation of a motor vehicle posed a threat to the public, and notified them and their attorneys that their licenses were temporarily suspended pursuant to Vehicle and Traffic Law § 510 (3) for the duration of the criminal proceedings.
Written notice of the suspensions was sent to the Driver Improvement Bureau of the Department of Motor Vehicles in Albany at the suggestion of the Department’s Legal Division.
CONCLUSION
It is hoped that this opinion helps to explain this court’s use of its discretion, under Vehicle and Traffic Law § 510 (3), in temporarily suspending a license. While the authority granted by the statute should be used cautiously, its usefulness should not be underestimated.